IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| TAMARA LYNN SCHAKE,<br><br>        Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>        Defendant. | No. 16-CV-2113-LRR<br><br>REPORT AND RECOMMENDATION |

_____

The claimant, Tamara Lynn Schake (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Claimant contends that the Administrative Law Judge (ALJ) erred in determining that she was not disabled.

For the reasons that follow, I recommend the District Court affirm the Commissioner's decision.

## I.    BACKGROUND

I adopt the facts as set forth in the parties' Joint Statement of Facts and therefore only summarize the pertinent facts here. (Doc. 12). Claimant was born in 1966 and therefore was 44 years old on the date of the alleged onset of disability and 49 years old

at the time of the ALJ's decision. (AR 30).[1] Claimant earned a Bachelor's degree and a Master's degree in early childhood, special needs education. (AR 45). Claimant has past relevant work as an administrative assistant, insurance clerk, records clerk, retail sales clerk, and teacher. (AR 30).

In 2013, claimant filed an application for disability benefits alleging a disability onset date of October 22, 2011. (AR 16). The Commissioner denied claimant's disability application initially and on reconsideration. (AR 178-99, 202-21). On August 5, 2015, ALJ Tela L. Gatewood conducted a hearing at which claimant and a vocational expert testified. (AR 78-129). On November 17, 2015, ALJ Michael D. Shilling conducted a second hearing at which claimant and a vocational expert again testified. (AR 40-77).[2] On December 14, 2015, ALJ Shilling found claimant was not disabled. (AR 16-32). On September 23, 2016, the Appeals Council affirmed the ALJ's finding. (AR 1-3). The ALJ's decision, thus, became the final decision of the Commissioner. 20 C.F.R. § 404.981.

On November 14, 2016, claimant filed a complaint in this Court. (Doc. 3). On May 12, 2017, claimant filed her opening brief. (Doc. 15). On July 25, 2017, the Commissioner filed her brief. (Doc. 18). On August 3, 2017, claimant filed her reply brief. (Doc. 19). On August 4, 2017, the Court deemed this case fully submitted and ready for decision. (Doc. 20). On the same day, the Honorable Linda R. Reade, United

---

[1] "AR" refers to the administrative record below.

[2] It is unclear from the record why a second hearing before a new ALJ took place, other than a reference in ALJ Shilling's decision that "[s]ince [the hearing before ALJ Gatewood], the undersigned has been appointed to the case" and "[a]n additional supplemental hearing was offered . . . ." (AR 16).

States District Court Judge, referred this case to the undersigned United States Magistrate Judge for a Report and Recommendation.

## II. *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit.

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to perform basic work activities. *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1521(b).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant can still do his past relevant work, then he is considered not disabled. Past relevant work is any work the claimant performed within the fifteen years prior to his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. "RFC is a medical question defined wholly in terms of the

claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite [ ] her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (citations and internal quotation marks omitted). The RFC is based on all relevant medical and other evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. (*Id.*). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. The Commissioner must show not only that the claimant's RFC will allow her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. THE ALJ'S FINDINGS

The ALJ made the following findings at each step:

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity since October 22, 2011, the alleged onset date of her disability. (AR 18).

5

At Step Two, the ALJ found that claimant had the severe impairments of "fibromyalgia, asthma/chronic obstructive pulmonary disease (mild), depression, anxiety, and attention deficit hyperactivity disorder." (AR 19).

At Step Three, the ALJ found that none of claimant's impairments met or equaled a presumptively disabling impairment listed in the relevant regulations. (AR 20).

At Step Four, the ALJ found claimant had the residual functional capacity to perform light work, with the following additional limitations:

> [Claimant] can lift and carry 20 pounds occasionally and 10 pounds frequently. She can walk or stand for 6 hours out of an 8 hour work day and sit for 6 hours out of an 8 hour work day. She can never climb ropes, scaffolds, or ladders. She must avoid prolonged exposure to chemicals, dust, fumes, and noxious odors. She must avoid unprotected heights and hazardous moving machinery. She is limited to simple work with occasional interaction with co-workers and occasional interaction with the general public. She retains the ability to accept supervision on a basic level.

(AR 21). Also at Step Four, the ALJ determined that claimant was unable to perform any past relevant work. (AR 30).

Finally, at Step Five, the ALJ found that, considering claimant's age, education, work experience and residual functional capacity, and based on the opinion of the vocational expert, there were jobs that existed in significant numbers in the national economy that claimant could perform. (AR 31). Among those jobs were office helper, routing clerk, and mail clerk. (*Id.*). Therefore, the ALJ found claimant was not disabled. (AR 31-32).

6

## IV.    THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (citations and internal quotation marks omitted). The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The Court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the Court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health*

*& Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The Court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the Court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the Court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the Court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The Court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion" (citation omitted).).

## *VI. DISCUSSION*

Claimant argues that the ALJ erred in concluding that she was not disabled. (Doc. 15). First, claimant asserts the ALJ erred by not following the correct standards in evaluating the expert medical opinions. (Doc. 15, at 4-13). Second, claimant argues the ALJ erred in not fully crediting claimant's subjective complaints. (Doc. 15, at 13-17). I will address each of these issues in turn.

8

### A. The ALJ's Evaluation of Medical Opinions

Claimant argues the ALJ erred in the amount of weight the ALJ assigned to the opinions of the various medical sources who rendered opinions regarding claimant's impairments and work-related limitations. Specifically, claimant argues that the ALJ erred in affording no weight to the opinions of claimant's treating doctor, Deborah Garrelts, M.D., and claimant's treating Nurse Practitioner, Vicki Boling. Claimant also argues that the "little weight" the ALJ afforded a one-time examining consulting physician, Dr. Nagarathma Nadipuram, M.D., was inadequate because the ALJ did not incorporate all of the work-related limitations identified by Dr. Nadipuram. Finally, claimant argues that the ALJ improperly afforded "significant weight" to a non-treating, non-examining state agency consulting psychologist, Dr. Scott Shafer, Ph.D., and that Dr. Shafer's opinion does not constitute substantial evidence. Claimant argues that the ALJ reversed the standard that should have applied, arguing that the ALJ should have afforded the opinions of claimant's treating sources great or controlling weight and afforded a non-treating, non-examining medical source opinion little or no weight.

Generally, it is for an ALJ to determine the weight to be afforded to the opinions of medical professionals, and "to resolve disagreements among physicians." *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014) (citation and internal quotation marks omitted). The opinion of a treating physician is usually entitled to substantial, if not controlling, weight, when that opinion is consistent with and supported by the other medical evidence and record. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). An ALJ may discount the opinions of treating physicians when the physician's own notes or other medical records are inconsistent with the limitations identified by the physician. *See Samons v. Astrue*, 497 F.3d 813, 819 (8th Cir. 2007) (ALJ entitled to discount the opinion of a treating physician

9

when that opinion is conclusory or inconsistent with the evidence of record). An ALJ may give the opinions from non-treating, non-examining sources more weight than an examining or treating source's medical opinion when they are also supported by "better or more thorough medical evidence." *Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000) (citation and internal quotation marks omitted). An ALJ may also discount a treating physician's opinion if that opinion is based on the claimant's subjective statements, especially where the ALJ finds the claimant's subjective description of impairments and limitations lack credibility. *See, e.g.*, *Renstrom v. Astrue*, 680 F.3d 1057, 1064-65 (8th Cir. 2012) (ALJ properly gave treating physician's opinion noncontrolling weight when that opinion was largely based on claimant's subjective complaints); *Kirby*, 500 F.3d at 709 (ALJ entitled to discount treating physician's statements regarding claimant's limitations because such conclusion was based primarily on claimant's subjective complaints and not medical evidence).

An ALJ may consider state agency physicians' opinions and may rely upon them in making findings. *See* 20 C.F.R. § 416.927(e); *see also Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (holding that "[i]t is well settled that an ALJ may consider the opinion of an independent medical advisor as one factor in determining the nature and severity of a claimant's impairment") (citation and internal quotation marks omitted). *See also Heino v. Astrue*, 578 F.3d 873, 880 (8th Cir. 2009) (ALJ can properly credit other medical evaluations in the record over that of the treating physician where those assessments are "supported by better or more thorough medical evidence" within the record (citation and internal quotation marks omitted)); *Hacker v. Barnhart*, 459 F.3d 934, 939 (8th Cir. 2006) (having determined the treating physician's opinion was inconsistent with substantial evidence in the record, the ALJ is clearly authorized to

10

consider the opinions of other physicians). When assessments of state agency medical consultants are consistent with other medical evidence in the record, these assessments, coupled with the remaining consistent medical evidence, can provide substantial evidence supporting the ALJ's RFC assessment. *See Stormo*, 377 F.3d at 807-08.

In this case, the ALJ summarized claimant's medical treatment from 2011 through 2015 in some detail. (AR 24-30). Claimant's medical history is remarkable in several respects, as reflected in the ALJ's decision. First, claimant was repeatedly noncompliant with taking medications and in seeing specialists. Second, claimant falsely reported to medical providers on multiple occasions that she had previously suffered from a number of conditions, including a stroke and heart attack. The medical records revealed the untruth of these statements. Third, claimant presented to hospitals on a number of occasions (calling the ambulance for herself from her home) claiming to suffer from medical emergencies that were found to be nonexistent. Fourth, objective medical examinations and testing of claimant's physical conditions repeatedly showed generally normal findings.

Dr. Nadipuram conducted a one-time examination of claimant on February 27, 2014. Other than claimant's assertion of having tender points and slightly limited range of motion in her back and all extremities, Dr. Nadipuram's physical examination showed otherwise normal conditions. (AR 696-98, 738). Dr. Nadipuram's mental status examination of claimant resulted in normal findings, aside from findings of anxious mood and inadequate remote memory. (AR 702). Dr. Nadipuram's only work-related comments appear in handwritten notes, where he wrote claimant was "unable to sit for 8 hrs due to pain in her body." (AR 699). Dr. Nadipuram concluded claimant had "significant fibromyalgia and chronic pain syndrome and also has bronchial asthma and

11

adult ADD anxiety and depression with OCD with significant psychiatric illness and also has GERD and from time to time insomnia." (AR738). The ALJ gave Dr. Nadipuram's opinion "little weight" because "his objective findings were limited and most of his opinion was taken directly from the opinion and information of the claimant." (AR 28). In spite of according Dr. Nadipuram's opinions little weight, the ALJ found claimant had the severe impairments of fibromyalgia, asthma/chronic obstructive pulmonary disease (mild), depression, and ADHD, consistent with Dr. Nadipuram's opinion. (AR 19). Moreover, the ALJ's residual functional capacity assessment accounted for these impairments by: (1) limiting claimant to light work; (2) imposing exertional limits on lifting, climbing, etc.; (3) imposing limits on exposure to chemicals, dust, and other matter that would exacerbate her asthma; and by restricting claimant to simple work with only occasional interaction with co-workers and the public. (AR 21).

Claimant asserts that Dr. Garrelts treated claimant, but that does not appear to be true. I agree with the Commissioner that Dr. Garrelts' name does not appear on any treatment records from the Black Hawk-Grundy Mental Health Center. Nor does claimant cite to any such record.[3] The only document bearing Dr. Garrelts' signature is a student loan discharge form on which she checked boxes on the form indicating that claimant was "unable to engage in substantial gainful activity" and that there is no "planned medical treatment, therapy or surgical intervention scheduled for this patient that will result in improvement to the diagnosis." (AR 836). The ALJ gave Dr. Garrelts' opinion there "no weight because treating source opinions on issues that are reserved to

---

[3] I further note that in her reply brief, claimant did not dispute the absence of Dr. Garrelts' name on Black Hawk-Grundy Mental Health Center records, nor does she point to any records showing that Dr. Garrelts actually treated claimant. (Doc. 19).

12

the Commissioner are never entitled to controlling weight or special significance." (AR 28). The ALJ was correct that the question of whether a claimant can engage in substantial gainful activity is a decision reserved to the Commissioner and, although the ALJ must consider such a statement from a treating source, the ALJ need not give it any weight. *Davidson v. Astrue*, 578 F.3d 838, 842-43 (8th Cir. 2009).

Vicki Boling was a registered nurse that worked at the Black Hawk-Grundy Mental Health Center. Ms. Boling opined on a student loan discharge form that claimant's "mental health condition is very severe which is going to totally inhibit her ability to work for the rest of her life." (AR 837). The ALJ gave Ms. Boling's opinion "no weight" because she "is not an acceptable medical source," and because her opinion was "a conclusion of disability reserved to the Commissioner." (AR 28). Again, the ALJ properly rejected Ms. Boling's opinion because it was on a matter reserved to the Commissioner. Ms. Boling also completed a Mental Impairment Questionnaire provided by claimant's attorney. (AR 1507-08). The form merely provided checkboxes with terms like "moderate" and "marked" with regard to functioning. As the ALJ properly noted (AR 28), Ms. Boling did not provide any explanation as to how the ratings actually limited claimant's ability to work, which entitled the ALJ to accord the checkbox form no weight.

The ALJ did afford "significant weight" to state agency psychologist Dr. Shafer's opinion that claimant had the "ability to perform routine tasks not requiring sustained attention or extensive contact with others." (AR 28, 143). The ALJ afforded significant weight to Dr. Shafer's opinion because of Dr. Shafer's expertise in the field, and also because the medical evidence supported Dr. Shafer's opinion. (AR 28). Based on my own review of the medical records, I find the ALJ had substantial evidence in the record

13

to rely on Dr. Shafer's opinion. Claimant's mental health records generally show mild mental health limitations that are controllable when she is compliant with her medication.

It is the ALJ's duty to weigh the medical evidence. *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'" (quoting *Bentley v. Shalala*, 52 F.3d 784, 785 (8th Cir. 1995))). Here, the ALJ weighed the evidence and resolved inconsistencies between the various medical opinions in light of the medical record as a whole. It is not for this Court to reweigh the same evidence; rather, it is for this Court to determine if there was substantial evidence in the record as a whole to support the ALJ's conclusions. *See Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999) ("We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome." (citation omitted)). It is the claimant's burden to prove she had greater limitations than those found by the ALJ. *See Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). I find claimant has failed to carry this burden. I further find that substantial evidence in the record as a whole does support the weight the ALJ afforded the opinions of the various medical sources. Therefore, I conclude the ALJ did not err, and I recommend the District Court affirm the Commissioner on this ground.

### B. *The ALJ's Credibility Determination*

Claimant argues that the ALJ's assessment of claimant's credibility was flawed because the ALJ did not provide good reasons for disbelieving claimant. (Doc. 15, at 13-17). Claimant faults the ALJ regarding the ALJ's skepticism about the degree of

claimant's fibromyalgia. Claimant also dismisses her own imperfect diligence in taking her medications as insignificant or a byproduct of her mental illness. (Doc. 15, at 16).

Although the ALJ found claimant's impairments to be severe, the ALJ found claimant's statements "not entirely credible" "concerning the intensity, persistence and limiting effects of these symptoms." (AR 23). The ALJ reviewed in detail claimant's medical treatment from 2011 through 2015, noting a number of things the ALJ found inconsistent with claimant's description of the severity of her symptoms. (AR 24-30). In particular, the ALJ pointed out a number of things that detracted from claimant's credibility. First, claimant was not merely less than perfect in taking her medications; rather, she would halt taking medications for weeks at a time with varying explanations for her non-compliance. (AR 30). Moreover, claimant "has alleged a history of transient ischemic attack, stroke, and myocardial infarction[,] but the medical record[s] in evidence do[ ] not confirm any of these events." (AR 29). The ALJ noted that claimant has no treating cardiologist or neurologist, both of which are medical providers one would logically expect to find treating someone with such a medical history. (*Id.*). Claimant alleged she could not open an Eggo box or pull up Pop Tarts, but the ALJ correctly noted that there are no medical records showing claimant had any loss of strength in her hands or any other medical explanation for this alleged functional limitation. (*Id.*). Claimant stated to medical sources that she had problems with dizziness and depth perception, but there are no records to support this subjective claim, nor has she received any treatment for a vision condition. (*Id.*). Claimant testified that she did not help at all in taking care of her daughter's children (AR 46), but the medical records repeatedly make reference to her taking care of her grandchildren. Claimant repeatedly called for ambulances and was admitted to the emergency room only to find she did not have significant medical

15

issues. (AR 30). Claimant reported having trouble being able to focus to complete a sentence, but the ALJ's own observations of claimant's testimony at the hearing demonstrated no such difficulty. (AR 29).

The ALJ did express some doubt about claimant's fibromyalgia. (AR 29). Claimant argues this skepticism was misplaced, medically unsupported, and shows that the ALJ improperly played doctor. (Doc. 15, at 14-16). The medical records show, however, that only Dr. Nadipuram diagnosed claimant with fibromyalgia after a single consultative examination. There are no other medical records or testing to support this diagnosis. Furthermore, claimant's primary care physician did not diagnose claimant with the condition. (AR 29). Despite the ALJ's valid basis for skepticism, the ALJ identified fibromyalgia as a severe impairment. (AR 19).

A court reviews an ALJ's credibility determination through an examination of the *Polaski* factors and the mandates of SSR 14-1p. Under the *Polaski* factors, an ALJ must consider the "claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the Court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).

In *Lowe*, the Eighth Circuit Court of Appeals stated, "[t]he ALJ was not required to discuss methodically each *Polaski* consideration, so long as he acknowledged and examined those considerations before discounting [claimant's] subjective complaints."

16

*Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citation omitted). If the ALJ gives a good reason for discrediting a claimant's credibility, then the Court will defer to the ALJ's judgment "even if every factor is not discussed in depth." *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (citation omitted). "Although the ALJ may disbelieve a claimant's allegations of pain, credibility determinations must be supported by substantial evidence." *Jeffery v. Sec'y of Health & Human Servs.*, 849 F.2d 1129, 1132 (8th Cir. 1988) (citation omitted). "Moreover, the ALJ must make express credibility determinations and set forth the inconsistencies in the record that lead him to reject the claimant's complaints." (*Id.*). "Where objective evidence does not fully support the degree of severity in a claimant's subjective complaints of pain, the ALJ must consider all evidence relevant to those complaints." *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) (citation omitted).

Here, the ALJ found that the medical records were inconsistent with the degree of severity of pain and limitations reported by claimant. An ALJ may properly discount subjective complaints if inconsistencies exist in the record as a whole. *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006); *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003); *Polaski*, 739 F.2d at 1322. Upon my own review of the records, I find there is support for the ALJ's conclusion.

The ALJ also discounted claimant's credibility because claimant was repeatedly noncompliant with taking medications, sometimes for weeks. The medical records bear this out. The case law is clear that an ALJ may consider noncompliance with medical treatment as detracting from a claimant's credibility. *See, e.g.*, *Wright v. Colvin*, 789 F.3d 847, 854 (8th Cir. 2015) (holding that a claimant's failure to comply with medical treatment diminished the claimant's credibility); *Wildman v. Astrue*, 596 F.3d 959, 966

17

Case 6:16-cv-02113-LRR-CJW   Document 21   Filed 09/07/17   Page 17 of 19

(8th Cir. 2010) (same); *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001) (same).

The ALJ also considered claimant's daily activities for the purpose of assessing claimant's credibility. (AR 29-30). The ALJ noted that claimant made several trips to Minnesota to care for her grandchildren, an activity that was inconsistent with claimant's description of the severity of her impairments. *Wagner v. Astrue*, 499 F.3d 842, 851-52 (8th Cir. 2007) (noting that although a claimant need not be bedridden to be disabled, an ALJ may take into account the degree to which a claimant's daily activities are inconsistent with the alleged severity of impairments).

In short, this is not a case where an ALJ made broad, vague, and conclusory findings regarding a claimant's credibility. The ALJ's basis for discounting claimant's credibility was detailed and specific, with references throughout to the record. Although the Court could reach a different credibility finding, I find there is substantial evidence in the record as a whole to support the ALJ's credibility findings in this case. Where an ALJ gives good reason for discrediting a claimant's testimony, a reviewing court should defer to the ALJ's credibility findings. *Halverson v. Astrue*, 600 F.3d 922, 931-33 (8th Cir. 2010). Accordingly, I recommend the Court find the ALJ did not err in his credibility findings.

## VI. CONCLUSION

For the reasons set forth herein, I find the ALJ acted well within the zone of choice within which the Commissioner may act. *Culbertson*, 30 F.3d at 939. Therefore, I respectfully recommend the District Court **affirm** the Commissioner's determination that

claimant was not disabled, and enter judgment against claimant and in favor of the Commissioner.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 7th day of September, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa